# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| BETTY L. RUSSELL, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | 2:07-cv-1934-JHH |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | )<br>)<br>) | |
| DEFENDANT. | ) | |

## MEMORANDUM OF DECISION

Plaintiff Betty L. Russell brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.[1]  For the reasons set forth below, the court finds that the decision of the Commissioner is due to be

---

[1]  In general, the legal standards are the same regardless of whether a claimant seeks DIB or supplemental security income.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.  See Borden v. Astrue, 494 F. Supp.2d 1278, 1280 n.1 (N.D. Ala. 2007).

affirmed because it is supported by substantial evidence and proper legal standards were applied.

## I.  PROCEDURAL HISTORY

Plaintiff filed her application for DIB and SSI on May 15, 2003, alleging a disability onset date of January 17, 2001.  (Tr. 32-40, 47-49.)  The applications were denied initially and also upon reconsideration.  (Tr. 32-34, 36.)  Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ).  The hearing was held on September 22, 2005 in Birmingham, Alabama.  (Tr. 335-57.)  In his December 15, 2006 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act and thus ineligible for DIB and SSI.  (Tr. 18-21.)  After the Appeals Council denied plaintiff's request for review of the decision of the ALJ, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.  (Tr. 16-17.)

## II. STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the decision of the ALJ, see 42 U.S.C. § 405(g); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the correct legal standards were applied.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  Sections 405(g) and

1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. See id. (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence. Dyer, 395 F.3d at 1210 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). "It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Martin, 894 F.2d at 1529 (quoting Bloodsworth, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. Phillips v. Barnhart,  357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  While the court acknowledges that judicial review of the findings of the ALJ is limited in scope, the court also notes that review "does not yield automatic affirmance.." Lamb, 847 F.2d at 701.

3

### III.  ADMINISTRATIVE RECORD

At the time of the decision, plaintiff was forty-one  years old, and had a high school education.  (Tr. 338.)  Plaintiff had previously worked as a waitress (Tr. 339.)  According to plaintiff, she has been unable to engage in substantial gainful activity since January 2001, due to seizures,[2] anxiety and Hepatitis C.  (Tr. 340.)

The medical records and plaintiff's hearing testimony reveals a long history of alcohol dependence and abuse.  Medical records from St. Vincent's Hospital, the Medical Center East, Carraway Methodist Medical Center, Cooper Green Hospital, Dr. Marc Mayhew and Pearsom Hall Alcoholism Recovery Series, from May 2001 to July 2005, document a pattern of alcohol and substance abuse, and alcohol and substance dependence.  (Tr. 85-327.)  On May 10, 2001, Plaintiff was diagnosed with seizures, secondary to either alcohol consumption or withdrawal, acute or chronic pancreatitis due to alcoholism and alcohol abuse.   (Tr. 87.)  Then, on March 23, 2002, Dr. Brent Barranco, a physician at St. Vincent's Hospital Emergency Room, diagnosed plaintiff with alcoholic seizures with past history of alcoholism, pancreatitis and seizures. (Tr. 87-90.)  At the time of admission, plaintiff acted confused, disoriented, and aggressive, and seemed out of

---

[2] At the hearing in September 2005, plaintiff testified that her seizures began in 2004, and that she had not had a seizure since February 2005.  (Tr. 341.)

4

touch with reality.  (Tr. 103.)  She had to be restrained for 24 hours to prevent harm to herself.  (Id.)

On June 19, 2003, Dr. Jerry Howell diagnosed plaintiff with alcohol dependence, alcohol withdrawal syndrome and depressive disorder; hepatitis and history of pancreatitis.  (Tr. 161.) Although Plaintiff admitted to drinking alcohol on a daily basis since age sixteen, she said that she had never been in treatment for her progressive alcohol abuse and dependency.  (Tr. 161-62.)  She told Dr. Howell that she "drinks every day -- all day" (tr. 162) and consumes at least a "fifth" of liquor daily. (Tr. 167.)   Dr. Howell noted that plaintiff was depressed, but not suicidal, and she denied having any psychotic, manic or panic symptoms. (Tr. 161-62.)

The day after being admitted to the hospital in June, plaintiff told medical personnel that she "felt better because she was able to sleep for twenty-four hours." (Tr. 162.)  She was still irritable and guarded, but her speech was coherent, goal directed and had a regular rate and rhythm.  (Id.)  Plaintiff wanted to be discharged from the chemical dependency unit immediately and ventilated anger towards the staff.  (Id.)   Medical records document that plaintiff had little insight into the degree of her alcohol dependency.  (Id.)  Dr. Howell's diagnostic impression was Hepatitis C, alcoholic liver disease, alcohol withdrawal seizures

by history, severe psychological stressors.  (Tr. 165.)  She was noted to have Axis

I diagnoses of alcohol dependence, alcohol withdrawal syndrome, AND

depressive disorder. Axis II was deferred but borderline personality disorder was

suspected. Axis III diagnoses included hepatitis C, fracture of the left

foot, and past history of pancreatitis. Axis IV diagnoses included severe psycho

social stressors related to patients Axis I and III diagnoses and ensuing life

problems.  (Tr. 161.)  Axis V indicated that Global Assessment of Functioning at

the time of this admission was probably around 30.  (Id.)  The best that plaintiff

had done that year was around 50 to 55.  (Id.)

On August 6, 2003, plaintiff returned to Carraway after falling from an

alcohol withdrawal seizure; her head was bleeding from the fall.  (Tr. 150-60.)

She again admitted to abusing alcohol, but refused to go into an alcohol and drug

program, against medical advice, because she had "some personal problems."  (Tr.

157.)  Plaintiff was observed with multiple abrasions to the head, "jerking,"

"tremors," and alcohol withdrawal seizures.  (Tr. 155.)  She had to be sedated due

to her severe state of agitation and violent tendencies.  (Tr. 158). A CT scan of her

head showed a scalp hematoma with no abnormality present. (Tr. 160.)

On August 14, 2003, plaintiff underwent a consultative examination by Dr.

Marc Mayhew. (Tr. 267-69.)  Plaintiff admitted that she continued to drink at least

6

one pint of bourbon every day.  (Tr. 267.)  She stated, however, that she could

perform all activities of daily living including cleaning the house, bathing and

putting her clothes on without the need for assistance.  (Id.)   Plaintiff's physical

examination was normal.  (Tr. 268.) Her chest was clear to auscultation and she

had normal muscle mass.  (Id.)  Additionally, her neurological examination results

were normal.  (Tr. 269.)

Dr. Mayhew's diagnostic impression was that plaintiff was a thirty-eight

year old woman with chronic alcohol dependency/abuse and history of

multiple hospital admissions for treatment of alcohol withdrawal seizures.  (Id.)

He also diagnosed her with Hepatitis C, related to her alcohol abuse and with

depression and anxiety.  (Id.)   In Dr. Mayhew's medical opinion, "clearly, this

woman's problems stem from her alcohol abuse."  (Tr. 270.)

Plaintiff was again seen at Carraway on April 12, 2004.  She was noted to

abuse alcohol, tobacco and recreational substances.  (Tr. 146-47.)  Treatment notes

from April 24, 2004 state that plaintiff wanted to get into alcohol detox treatment,

was positive for Hepatitis C and has anxiety and seizures. (Tr. 141.)

Plaintiff was an inpatient at Pearson Alcoholism Recovery Center from May

11, 2004  through May 14, 2004.  (Tr. 317-22.)  This was plaintiff's first treatment

for alcoholism and, although she was going through withdrawal when she entered,

notes indicate that she was oriented to person, place, time and situation and was alert and ambulating without assistance.  (Tr. 321.) There was no treatment plan developed because Plaintiff left against staff advice on May 14, 2004. (Tr. at 321-22.)  Notes indicate, however, that "[w]ith continued care, 12-step meetings, sponsorship and positive peer support, [plaintiff] has the potential to develop a strong recovery program."  (Id.)

Immediately following her departure from Pearson,[3] plaintiff presented to the Cooper Green Hospital emergency room with pain and a possible broken left foot. (Tr. 258-64).  There was swelling noted around the second toe and pain with movement of the left foot.  (Id.)   The x-ray revealed a deformity of the third and fourth metatarsals secondary to an old trauma of the left foot but no current fracture.  (Id.)

Treatment notes from Cooper Green on July 13, 2004 state that plaintiff "was in what appeared to be [alcohol] withdrawal" and described tremors, anxiety and depression symptoms.  (Tr. 251-52.)  She stated that she drinks from 5:00 in the morning until 10-12:00 at night each day and that her symptoms begin if she

---

[3] The date on the records from Cooper Green state that she was examined on May 13, 2004.  (Tr. 258.)  This date is inconsistent with the records from Pearson which state that she was not discharged from Pearson until May 14, 2004.  (Tr. 321.)

8

has not had a drink by 10:00 in the morning. (Tr. 252.) Plaintiff stated that she would consider psychiatric treatment. (Id.)

On August 4, 2004, plaintiff again presented to Cooper Green for a pap smear, which was her first one since she was raped at age twelve. (Tr. 249-50, 252.) She was noted to have seizures, ETOH, anemia, depression, anxiety, dental caries, GERD and amenorrhea. (Tr. 249-50.) On August 16, 2004 Plaintiff was seen for pain in the right wrist and left foot, and she was positive for alcohol, tobacco and cocaine. (Tr. 245-46.)

On August 24, 2004 she had epigastric pain and alcohol related GERD. (Tr. 234-44.) Plaintiff was diagnosed with having very acute liver problems resulting from a history of alcohol abuse. (Tr. 140.) Records indicate that plaintiff needed a prescription regarding her acute alcohol dependency, and that she continued to abuse alcohol, tobacco and recreational drugs. (Tr. 140, 146). She complained of panic attacks and anxiety. (Tr. 146.) Medical staff counseled plaintiff to stop abusing illicit drugs, alcohol, tobacco; and to refrain from her "unsafe sexual practices." (Tr. 147.)

Treatment notes from December 9, 2004 state plaintiff had significant liver disease from Hepatitis and alcohol use. (Tr. 278.) The notes indicate that her liver disease needed to be treated, but that she had to be off alcohol for three to six

9

months before beginning treatment. (Id.)  Diagnosis was Hepatitis C, seizures, hypertension, alcohol dependency and hepatosplenomegaly. (Tr. 278-79.)

On March 16, 2005, she presented to Cooper Green with worsening panic attacks and informed the doctor that she was thinking seriously about going into rehab, but preferred other options.  (Tr. 276-77.)  She stated that she had experienced a seizure the last week, which had occurred days after she stopped drinking alcohol, and alcohol was determined to be the cause of the seizure.  (Id.)  Diagnoses included Hepatitis C, thrombocytopenia, acute bronchitis and sinusitis, positive for cocaine, H-Pylori, GERD, ETOH, and a smoker.  (Id.)

Plaintiff was again seen in the emergency room in Cooper Green on July 8, 2005 for numbness of the left arm and hand and depression. The physician's impressions were numbness of the left arm, sleep disorder, panic attacks, and acute chronic alcoholism.  (Tr. 272-73.)  Treatment notes indicate that plaintiff is a "difficult patient" and that she stops her seizures by drinking; they also state that "her body is dying as a result [and] little can be done if she continues to drink." (Tr. 272.)  Finally, on September 21, 2005, plaintiff was seen in the emergency room at Cooper Green with anxiety and headache. (Tr. 325-27.)

## IV.  THE DECISION OF THE ALJ

Determination of disability under the Social Security Act requires a five step analysis.  See 20 C.F.R. § 404.1520.  First, the Commissioner determines whether the claimant is working.  Id.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Id.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations.  Id.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  Id.  The claimant's residual functional capacity is what the claimant can do despite his impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  Id.  In making this final determination, the Commissioner will use the Medical-Vocational guidelines in Appendix 2 of part 404 of the regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

11

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that "the claimant must establish a prima facie case by demonstrating that he can no longer perform his former employment."  Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).   Once plaintiff shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment."  Id.

The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. 22, 24.)  Next, the ALJ found that plaintiff had limitations in her ability to complete a normal eight-hour workday and a 40 hour workweek, and that "these limitations, among others, are attributable to her alcohol abuse and/or alcohol withdrawal symptoms."  (Tr. 22.) He concluded that she had a severe impairment of alcohol abuse (tr. 24), and that her symptoms from liver damage, seizures, depression and anxiety, including "'marked' restriction in activities of daily living, difficulties in social functioning, deficiencies of concentration, persistence and pace, and 'repeated' episodes of

deterioration or decompensation" meet Section 12.09 in the Listing of Impairments in Appendix 1 to Subpart P of Regulations Number 4.[4]  (Tr. 22.)

Under the fourth step, the ALJ next assessed her residual functional capacity.  In making this assessment, the ALJ noted plaintiff's testimony regarding her nausea, inability to function because of liver damage, difficulty concentrating, shaking in the morning, and panic attacks.  (Id.)  He also noted that plaintiff stated that if continues to consume alcohol she will die of liver disease.  (Id.)  He noted her numerous hospitalizations and diagnosis of alcohol dependence, alcohol withdrawal syndrome, seizures, depressive disorder, hepatitis C, and anxiety.  (Id.)  The ALJ concluded that the records show plaintiff's abuse of alcohol and that "both her physical and mental symptomatology are due to her continuing alcohol abuse and significant alcohol withdrawal."  (Id.)  After further review of the medical records, the ALJ concluded that plaintiff would not be totally disabled absent her alcohol abuse.  (Tr. 23.)

Finally, the ALJ found that plaintiff is limited in the full range of work at the light exertional level based on her physical and mental limitations in the

---

[4] The court notes that under the "findings" section, the ALJ stated that the claimant does not have an impairment, or combination of impairments, that meets or equals the severity of impairments in the Listing of Impairments.  (Tr. 24.)  This inconsistency is not material, however, because the ALJ concluded that her alcoholism is a contributing factor material to a disability determination.  (Tr. 22-23.)

13

absence of her alcohol abuse.  (Id.)  Because her past work experience as a

waitress falls into that category, the ALJ concluded that plaintiff is able to perform

her past relevant work and, therefore, has not been under a disability from her

alleged onset date through the date of the decision.  (Tr. 23, 24.)

### V.  PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

The plaintiff seeks to have the ALJ's decision, which became the final

decision of the Commissioner following the denial of review by the Appeals

Council, reversed, or in the alternative, remanded for further consideration.

Plaintiff first argues that the ALJ erred when he did not consider her other medical

diagnoses, including her "significant, underlying psychological impairments."

(Pl.'s Br. at 8, 9.)  Plaintiff also contends that "there is absolutely nothing in the

record for the ALJ to base his conclusions are to her residual functional capacity"

and that the ALJ did not properly apply the drug and alcohol regulations to

determine whether she would still be disabled if she stopped using drugs and

alcohol  (Id. at 10-11).

### A.  Other Impairments

Plaintiff argues that the ALJ erred in failing to find whether her other

conditions constitute a severe impairment.  It is unnecessary to decide this issue,

however.  According to the regulations, upon determining that a claimant has one

14

severe impairment, the ALJ must continue with the remaining steps in the disability evaluation.  See Marziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).  Here, the ALJ found that Russell suffers from the severe impairment of alcohol abuse.  Accordingly, the ALJ proceeded with the remaining steps in his disability determination.  Since the ALJ considered the plaintiff's other conditions in determining whether plaintiff retained sufficient residual functional capacity (see tr. 22), the failure to find whether plaintiff's other conditions constituted severe impairments is not in error.  See id.

### B.  Residual Functional Capacity

Plaintiff argues that substantial evidence does not support the finding of the ALJ regarding her residual functional capacity.  She contends that the ALJ ignored her psychological impairments and that the ALJ should have had the plaintiff examined by a psychological consultative examiner because of her alleged underlying psychological impairments.  She also argues that the ALJ improperly applied the drug and alcohol regulations.  Plaintiff's arguments fail.

### 1.  Substantial Evidence Supports the RFC Finding

The ALJ applied proper legal standards when calculating plaintiff's RFC, and substantial evidence supports his conclusion.  An RFC assessment "is the adjudicator's ultimate finding of 'what you can still do despite your limitations.'"

SSR 96-5p, 61 Fed. Reg 34471, 34473 (1996) (citing 20 C.F.R. §§ 416.945 and

416.946).  The regulations make clear that the sole responsibility for determining

plaintiff's RFC falls on the ALJ.  20 C.F.R. §§  404.1527(e)(2); 404.1545(a)

(2007).   While an ALJ should review all of the medical evidence and can consider

opinions from acceptable medical sources when calculating RFC, "the final

responsibility for deciding [those] issues is reserved for the Commissioner." 20

C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); see SSR 96-5p, 61 Fed. Reg.

34471 (1996).

    The record makes clear that the ALJ's RFC assessment is supported by

substantial medical and testimonial evidence.  The ALJ determined that plaintiff

could perform a full range of work at the light exertional level based on her

physical and mental limitations in the absence of her alcohol abuse.  (Tr. 23.)  In

making that finding, the ALJ thoroughly analyzed and took into account the

medical evidence of record and plaintiff's own testimony regarding her condition.

    The ALJ's assessment is consistent with all the medical records presented

by plaintiff.  As carefully laid out by the court in Section III, supra, the medical

evidence of record shows an overwhelming pattern of alcohol abuse and

dependence.  From the first medical record in May 2001 to the last medical

records in the summer of 2005, plaintiff's different treating physicians have all

concluded that her physical <u>and</u> psychological conditions stem from alcohol abuse and/or withdrawal. (Tr. 85-327.)  Additionally, the consultative examiner, Dr. Mayhew, opined that "clearly, this woman's problems stem from her alcohol abuse." (Tr. 270.)  There is simply no evidence in the record to support plaintiff's assertion that her psychological conditions preceded her alcohol abuse or are not a result of her alcohol dependence and abuse.  Instead, the record suggests exactly the opposite.

Moreover, plaintiff's own testimony supports the ALJ's assessment.  She testified at the hearing that her doctors told her that she would die from the effects of her long term alcohol abuse if she continued to drink.  (Tr. 346-47.)  She also testified that she continues to drink, despite this strong warning from her physicians.  (Tr. 351.)

In light of the above evidence, and applying the proper legal standards, the court finds that substantial evidence supports the ALJ's RFC assessment.

2.  <u>The ALJ Did Not Err by Failing to Order a Consultative Examination</u>

Given that substantial evidence, this court finds no error in the decision not to order an additional consultative examination when calculating plaintiff's RFC. Although it is certainly true that the ALJ could have ordered additional examinations to aid in his RFC assessment, he was not obliged to do so.  The

regulations clarify that a "consultative examination may be purchased when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on your claim." 20 C.F.R. §§ 404.1529a(b), 416.919a(b).  Indeed, "'in fulfilling his duty to conduct a full and fair inquiry, the administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision.'"  Holladay v. Bowen, 848 F.2d 1206, 1207 (11th Cir. 1988) (quoting Ford v. Sec. of Health & Human Servs., 659 F.2d 66, 69 (5th Cir. 1981)).  Given the consistent and overwhelming evidence that plaintiff's condition was based solely on her alcohol dependency and abuse, there was no reason for the ALJ to expend additional resources to obtain a superfluous opinion.

Moreover, it is important to note that while the ALJ has the duty to "investigate the facts and develop the arguments both for and against granting benefits," Sims v. Apfel, 530 U.S. 103, 111 (2000), plaintiff has the responsibility to produce evidence in support of his disability claim, Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  Evidence regarding the specific limitations and restrictions plaintiff experiences in her ability to work is evidence plaintiff is responsible for producing.  See Ellison, 355 F.3d at 1276.  Accordingly, it is plaintiff, and not the ALJ, who carries the burden to provide a medical record that

is complete in the first instance. See 20 C.F.R. §§ 416.913(e), 416.916.  If plaintiff had or knew of additional medical evidence that supports her claims of disability, it was plaintiff's responsibility to raise that evidence for the ALJ to consider.

### 3.  The ALJ Properly Applied the Drug and Alcohol Regulations

Finally, plaintiff contends that the ALJ did not properly apply the drug and alcohol regulations.  An applicant for social security benefits is not considered disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  The key factor the Commissioner focuses on in deciding whether an applicant's alcoholism is a contributing factor material to the determination of disability "is whether [the Commissioner] would still find [the applicant] disabled if [he] stopped using drugs or alcohol."  20 C.F.R. § 404.1535(b)(1). That is, the Commissioner evaluates which of the applicant's physical and mental limitations would remain if the applicant stopped using drugs or alcohol and then decides whether any of those remaining limitations would be disabling.  Id. § 404.1535(b)(2).  If the ALJ determines that the claimant's remaining limitations would not be disabling, the ALJ will find that the drug usage or alcoholism is a contributing factor to the determination of disability.  See 20 C.F.R. § 404.1535(b)(2)(I).  Drugs and alcohol are a contributing factor material

19

to the determination of a disability when they form the exclusive basis for the finding of disability.  If there are other grounds for finding the claimant disabled, then drugs and alcohol are not a contributing factor material to the determination of disability.  See 20 C.F.R. § 404.1535(b)(2)(ii).  "[I]n disability determinations for which the medical record indicates alcohol or drug abuse, the claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination . . . ."  Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001).

The ALJ applied the above regulations properly.  He concluded that her enabling impairments all stem from her alcohol abuse, and that conclusion is supported by substantial evidence.  Because alcohol is a contributing factor material to the determination of disability, he properly concluded that plaintiff is not disabled under the regulations.

## VI.  CONCLUSION

In summary, the court concludes that the determination of the ALJ that plaintiff is not disabled was supported by substantial evidence and proper legal standards were applied in reaching this determination.  The final decision of the Commissioner, therefore, is due to be affirmed.

A separate order will be entered.

**DONE** this the ___21st___ day of January, 2009.

_____
SENIOR UNITED STATES DISTRICT JUDGE